UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JODY M. GOULD Individually and On Behalf of All Others Similarly Situated,<br><br>                                                Plaintiff,<br><br>             - against -<br><br>HELEN OF TROY LTD,<br>KAZ USA, INC., and KAZ INC.,<br><br>                                         Defendants. | Jury Trial Demanded<br><br>Case No. 16-cv-02033 |

## CLASS ACTION COMPLAINT

Plaintiff Jody M. Gould (hereinafter "Plaintiff"), by and through Counsel, individually and on behalf of all others similarly situated (hereinafter "Class") brings this Class Action Complaint against Defendants Helen of Troy Limited, Kaz USA, Inc., and Kaz Inc., (collectively "Defendants" or "Kaz"), and states as follows:

## I.     INTRODUCTION

1.     Plaintiff Jody M. Gould brings this class action on behalf of herself and all others similarly situated against Defendants seeking damages, restitution, a constructive trust, and injunctive relief for the proposed Class as defined herein.

2.     The subject matter of this action is Defendants' SmartHeat and SoftHeat brand Heating Pads, including, but not limited to Deluxe, Plus, Standard, and Ultra models, its Dunlap brand Heating Pads, as well as model numbers BL110, BL115, BL118, HBP4000, HEW3000, HP1000, HP1000-9-3P, HP1000-9-3P-S-CPN, HP1000-9-3P-S, HP110C, HP115-MR, HP215, HP215-24-3P-S, HP215C, HP215MR, HP218-12-3P-S, HP218C, HP218CWG, HP218-MR, R312WM, R318WM, 4950WM, HP710, HP710C, HP710N, HP710-24-3P, HP710-24-4P, HP710-24-3P-S, HP710-24-3P-S, HP710-24-3P-S-CPN, HP750, HP750C, HP750-S, HP750-S-

CPN, HP751, HP910, HP910C, HP910N, HP910-S, HP910-S-CPN, HP950, HP950-12-3P, HP950-12-3P-HOR, HP950-3P-S, HP950-12-3P-S-CPN, HP950C, R975WM, HP975-24-P-S, HP980, HP980C, HP980-12-3P, HP980-12-3P-S, HP980-12-3P-S-CPN, HP980-S-PDQ, HPM-970, HP1020, R1000WM, R1000WM-N, R312WM, R312WM-N, R318WM-N, R950WM and the equivalent Heating Pads that Defendants identified by different brands, models and model numbers (hereinafter collectively referred to as "Heating Pad(s)").

3.      This lawsuit is brought to remedy Defendants' violations of law in connection with the Heating Pads' design, manufacture, marketing, advertising, sales, performance, servicing, and warranty performance.

4.      The SmartHeat, SoftHeat, Kaz, and Dunlap brands' models share the same relevant design, parts, pieces, operation and materials. The only differences in the Heating Pads do not relate to arise from the defects that are relevant to or at issue in this lawsuit.

5.      The Heating Pad is a device that converts electricity into heat. It plugs into an ordinary electrical outlet and contains a wire coil inside of it. A control switch with different temperature range settings is attached to it by an electrical cord. When the Heating Pad is plugged-in and turned on, electricity is delivered to the internal electric coil that generates heat, growing increasingly hotter until automatically shut off by a thermostat located inside the Heating Pad and in close proximity to the internal coil (the "Thermostat"). Kaz also uses a "smartwire" technology by which temperature of the Heating Pad is regulated using a dual wire that allows it to sense resistance back to the circuit board in the controller.

6.      The delivery of electricity to the internal heating coil is interrupted when the Thermostat reaches a temperature predetermined by Kaz and which temperature, different at each setting, corresponds to the heating setting selected by the User ("User" or "Users" means

anyone in the United States who bought or used a Heating Pad); either low, medium, or high. Once the Thermostat stops the delivery of electricity to the heating coil, the Heating Pad begins to cool down until the Thermostat once again causes electricity to be delivered to the heating coil. This cycling back and forth from heating to cooling continues until the unit is manually turned off by the User, or automatically, after 30 to 120 minutes, depending on the model type.

7.     The Heating Pads have defects in materials, workmanship, parts, and design that cause them to burn Heating Pad Users and their property, or malfunction with substantial certainty within their useful life. These defects include:

   a.  The ability to use the Heating Pad between a person and a bed, sofa, couch, or chair while the Heating Pad delivers a continuous cycle of heat for 30-120 minutes;

   b.  The failure of the Heating Pad to monitor or control temperature at the surface of the Heating Pad which areas come in contact or near contact with Users' bodies;

   c.  Delivering heat to Users' bodies for extended periods of time of 30 to 120 minutes;

   d.  The failure of the Heating Pad to stop delivering heat when paced between a User and other objects that retain or trap heat, or prevent its rapid dissipation;

   e.  The failure of the Heating Pad to stop delivering heat when a User becomes unconscious and the Heating Pad becomes positioned between a User and other heat retaining or trapping objects; and

   f.  The failure of the Heating Pad to rapidly dissipate heat from itself when used between a person and an object.

(The foregoing listed defects in ¶ 7 (a – f) are hereinafter referred to as the "Defects").

8.     Kaz knowingly and/or recklessly concealed from consumers like Plaintiff and the Class, prior to purchase, material information regarding the safety, use, and operation of the

Heating Pads, thereby depriving Plaintiff and the Class of the right and opportunity to make informed decisions about whether to purchase the Heating Pads. Kaz's omissions of Material Facts include:

    a.   That Users cannot use the Heating Pad while sleeping;

    b.   That the Heating Pads can only be used in limited positions;

    c.   Users' skin would be burned regardless of the temperature control setting they selected;

    d.   That Users are required to inspect their skin under the Heating Pad "frequently;" (although if applied to Users in positions and locations on their bodies depicted in Kaz's advertisements, Users could not see their skin);

    e.   That Users needed to inspect their skin under the Heating Pad "frequently"; although Kaz never communicated to Users what skin conditions they should be frequently inspecting for, what the skin conditions looked like, or what they should do if they observed any particular condition on their skin;

    f.   That the "Automatic Shut-Off" only stopped the flow of electricity to the Heating Pad, and absorption of heat by the Users' bodies after 30-120 minutes;

    g.   That the "Automatic Shut-Off" did not automatically shut-off the Heating Pad so as to prevent skin damage, skin burns, or property damage;

    h.   That the Heating Pad could cause severe burns when used between the User and another object, such as a bed, sofa, couch or chair, and while sleeping or in a reduced state of alertness, such as when taking cold, flu or cough medications.

(The foregoing listed facts in ¶ 8 (a – h) are hereinafter referred to as the "Material Facts").

9.      The effects of using Defendants' defective Heating Pads and Defendants' failure to disclose the Material Facts causes the Heating Pads to:

a.   Overheat and become too hot to be safely used as Heating Pads;

b.   Burn Users' skin, cause fire, and damage property, or melt and damage themselves;

c.   Deliver excessive, harsh, painful, surging, non-therapeutic, and/or unpredictable heat;

d.   Create a high risk and probability of burning their Users;

e.   Malfunction and become inoperable;

f.   Shock Users;

g.   Be unfit for their intended purpose;

h.   Become worthless, or diminished in value.

(The foregoing listed effects in ¶ 9 (a – h) of using Defendants' defective Heating Pads are hereinafter referred to as the "Effects").

10.     As currently designed and manufactured, there is no way to eliminate the risk of the Effects caused by the Heating Pads. Kaz warns in its operating instructions, provided with the Heating Pads ("Operating Instructions"), that "[t]o **reduce** the risk of burns, electric shock, and fire, the product must be used in accordance with the following instructions…" (Emphasis added). Defendants' Operating Instructions admit that a User can only reduce the risk of being harmed from the use of the Heating Pad, but that the risk of harm cannot be eliminated.

11.     Therefore, it was and presently is known by Defendants and was and is reasonably foreseeable to them that the Plaintiff and the Class would suffer the Effects from using the Heating Pads. Kaz's failure to disclose the Defects, Material Facts and Effects to

consumers like Plaintiff and the Class, before they purchased the Heating Pads, were and are unfair, deceptive, unlawful, and fraudulent acts.

12.     Kaz warranted every Heating Pad against defective material, workmanship and parts. Kaz also warranted that every Heating Pad would provide "soothing therapy for pain relief," and also warranted that every Heating Pad would provide "soothing heat therapy."

13.     As a result of the Defects, the Heating Pads do not conform to the express warranties made by Defendants and in addition, are not fit or merchantable for their ordinary and intended use; i.e. to provide "soothing therapy for pain relief," and "soothing heat therapy" without causing injury to Users or their property.

14.     Kaz also violates state consumer protection statutes by omitting Material Facts and misrepresenting facts. Kaz does not disclose the omitted Material Facts to Plaintiff and the Class on its packaging and advertising. Kaz also misrepresents that the Heating Pads are capable of delivering "soothing therapy" and "soothing heat therapy;" however, Kaz admits in its written Warnings (defined below) concealed within its packaging material, only available to be read after a consumer purchases a Heating Pad, that its Heating Pads will burn Users at "any setting."

15.     Kaz also misrepresents the uses and benefits of the Heating Pads in advertising labels, and photograph on its packaging by depicting the Heating Pads' characteristics and the nature, benefits and quality of the experience Users will have if they purchase and use the Heating Pad. In its Warnings (defined below) and Operating Instructions, which are only potentially readable after a consumer purchases the product, Kaz states that the quality and effect of using the Heating Pad is not as represented on the packaging in which every Heating Pad is enclosed and which is a universally prominent marketing device for the Heating Pad.

16.     Nowhere on the Heating Pad packaging, which is the only visible communication to potential purchasers before they purchase the product, is a purchaser advised that they must read the Warnings and Operating Instructions before using the Heating Pad. Kaz also fails to state on the packaging that the Warnings (defined below) severely restrict and limited the Heating Pads' uses and benefits, nor does Kaz state that its Operating Instructions and Warnings (defined below) must be read and adhered to for the purchaser to safely use the Heating Pad.

17.     Plaintiff asserts claims on behalf of himself and all Heating Pad owners for violations of state consumer protection laws, warranty, and unjust enrichment laws, federal warranty laws and regulations, and New York consumer protection laws.

## II.     PARTIES

### Plaintiff

18.     Plaintiff Jody M. Gould is a resident of Port Crane, Broome County, New York and a citizen of New York. Plaintiff purchased a Kaz Heating Pad from Kmart, model: PK7792AB E26869. On or about November 8, 2015, Plaintiff's Heating Pad burned through her clothes and burned her lower back and buttocks causing blistering.

19.     Plaintiff Gould was injured when the Heating Pad did not automatically shut off. She received medical treatment for her burns. Areas of the Heating Pad itself were also burned and the plastic that covers the heating components became melted and discolored.

20.     Plaintiff Gould brings this action on behalf of herself individually, and on behalf of a class of persons similarly situated as described in the class below.

### Defendants

21.     Defendant Kaz USA Incorporated is a Massachusetts corporation with its principal place of business located at 250 Turnpike Road, Southborough, Massachusetts 01772.

22.     Defendant Kaz Incorporated is a New York Corporation with its principal place of business located at One Vapor Trail, Hudson, New York 12534.

23.     Both Defendants are subsidiaries of Defendant Helen of Troy Limited (NASDAQ: HELE).

24.     The Defendant parent company trades on the NASDAQ stock exchange in New York, NY and according to its Third Quarter Fiscal Year 2016 Results ("3rd Q Results"), has 28.6 million diluted shares outstanding.

25.     According to Helen of Troy Limited's 3rd Q Results, "Helen of Troy Limited is a leading global consumer products company offering creative solutions for its customers through a strong portfolio of well-recognized and widely-trusted brands, including: … Healthcare/Home Environment: Vicks®, Braun®, Honeywell®… and SoftHeat®"

26.     Kaz manufactures, distributes, markets, and sells Heating Pads under the brand names Kaz, Dunlap, SoftHeat, and SmartHeat. Kaz sells Heating Pads directly to consumers and Class members, located anywhere in the United States of America, through its own internet website "e-store" http://www.kaz.com/kaz/e-store/, as well as through national and regional retailers such as Kmart, CVS Pharmacy, Rite Aid, Wal-Mart, and others.

### III.     JURISDICTION AND VENUE

27.     This court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

28.     This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in this District, Defendants have sufficient minimum contacts with this District, and/or otherwise intentionally avails themselves

of the markets in this District through promotion, marketing and sales in this District so that the exercise of personal jurisdiction of this Court complies with judicial notions of fair play and substantial justice. Additionally, the Southern District of New York is the proper venue for this action because Defendants' shares are traded on the exchange in this District, Defendant Kaz is headquartered in New York, and some of the events or omissions giving rise to Plaintiff Gould's claims took place within this district.

## IV.   FACTUAL BACKGROUND

29.   Defendants are in the business of manufacturing, producing, distributing, marketing, advertising, and selling consumer goods, including Heating Pads throughout the United States under the brand names SmartHeat, SoftHeat, Kaz, and Dunlap ("Heating Pads"). The Heating Pads sold under these brands are substantially identical, and consumers like Plaintiff and the Class are informed and believe the brands of the Heating Pads are and were manufactured in the same facilities, using the same designs, components, parts and means and methods of assembly.

**Breach of Express and Implied Warranties**

30.   During the applicable time period, Kaz warranted the Heating Pads, all brands referred to herein, against defective materials, workmanship and parts as follows: a) Deluxe models – lifetime; b) Plus models – 5 years from date of purchase; c) Standard models – 3 years from date of purchase. [See Ex. 1, p. 7].

31.   During the applicable time period, Kaz warranted that the Heating Pads would automatically "shut-off," operate so as to deliver "soothing heat therapy" and "soothing therapy for pain relief," would deliver "SoftHeat" or "SmartHeat" and not burn Users' skin (the express written warranties and representative warranties are hereinafter referred to as "Warranties").

32.     Plaintiff relied on Kaz's express Warranties and the express Warranties became the basis of the bargains between Plaintiff and Kaz.

33.     The Heating Pads failed to conform to the express Warranties and Kaz breached the express Warranties by not repairing or replacing the Heating Pads or the Defects and defective parts therein.

34.     To the extent there is any notice requirement imposed by law, Plaintiff and the Class either gave notice before filing this lawsuit or notice is excused because Defendants have (and had) actual knowledge of the Defects in the Heating Pads that cause them to burn, or create a high risk of burning, their Users. In response to warranty claims by class members, Kaz routinely sends a replacement Heating Pad that is identical to the defective Heating Pad that malfunctioned, without modification to eliminate the Defects in the Heating Pad that create the risks of burning, shocking, or causing fires that were the bases of the warranty claims. Therefore notice to Kaz has been, is and will be futile, in that Kaz has refused to modify the Heating Pads to eliminate the Defects, the Effects of the Defects.

35.     As part of the sale of each Heating Pad, Kaz warranted, marketed, and advertised that the defective Heating Pads were of merchantable quality and fit for the ordinary purpose for which Heating Pads are used, i.e. providing "soothing heat therapy" and "soothing therapy for pain relief."

36.     As to those Heating Pad owners to whom Kaz offered to repair or replace their defective Heating Pads in response to their complaints of burns, or other complaints related to the Defects and the Effects, the repair or replacement fell short of Kaz's warranty obligations because Kaz's "repair" or replacement of the originally-purchased and defective Heating Pad was to give a Class member yet another defective Heating Pad that had the same Defects as the

originally-purchased Heating Pad. Kaz fell short of its warranty obligations because it failed to remedy and eliminate the Defects in the Heating Pads that cause them to burn Users, or create a substantial risk of burning or shocking Users, and causing fires.

37.     Despite Kaz's knowledge that its Heating Pads are defective, and Plaintiff Gould's pre-litigation request that a) Kaz stop selling the Heating Pads with the Defects, or b) modify the Heating Pads so they are not defective and offer to replace all of the Heating Pads with non-defective heating pads, Kaz i) continues to sell the Heating Pads with the Defects present in them; ii) has not modified the Heating Pads to eliminate the Defects; iii) has not offered to replace all of the Heating Pads with non-defective heating pads, and; iv) has not replaced or repaired the workmanship, parts, and/or materials that cause the Defects, or v) refunded all or part of the monies the Plaintiff and Class members paid for their Heating Pads.

**Misrepresentations and Omissions**

38.     Kaz fails to disclose Material Facts on any labels, advertising, or marketing material available to potential purchasers, at the time of, or in advance of their purchase. The omissions are material because reasonable consumers would want to know whether a device they are about to purchase for therapeutic purposes actually has a high propensity to burn or injure them, or cause pain and discomfort.

39.     Kaz also omits the material fact that the Heating Pads cannot be used while sleeping. These omissions are misleading and likely to deceive because consumers are lured into buying the Heating Pads when they are in pain, discomfort, feeling ill, drowsy, or sleepy. Had Kaz disclosed the true facts regarding the limited uses of the Heating Pads and the high risk of being burned if used, Plaintiff and members of the Class would not have purchased the Heating Pads.

40.     Furthermore, Kaz's packaging of the Heating Pads misrepresents, by omission, the Heating Pad's uses and benefits. Kaz fails to alert consumers at the point of purchase that the Heating Pads cannot be used when placed between a person and a supportive object, such as a bed, sofa, couch, or chair. Kaz does not communicate to consumers, in advance of their purchase, that they could only use the Heating Pad in such a manner that one side of the Heating Pad is always exposed to nothing other than air.

41.     In other words, Kaz never communicates at or prior to the point of purchase that its Heating Pads cannot be used to provide "soothing heat therapy" or the "soothing therapy for pain" while sitting in a chair or lying on a sofa, in bed, or against a pillow. This is material information because it severely restricts the possible uses and benefits of the Heating Pad and is something that a reasonable consumer would want to know before purchasing one.

42.     Kaz misrepresents the benefits, uses, characteristics, and quality of the SoftHeat models by using the term "SoftHeat" and "SmartHeat" on the packaging material and in advertising, both prior to and at the time of purchase. Use of the terms "SoftHeat" and "SmartHeat" are misleading and deceptive because the Heating Pads do not deliver soft, gentle, soothing, or smart heat therapy to the Users' bodies as the terms used by Kaz necessarily imply. Instead, the Heating Pads cause the Effects.

43.     Kaz misrepresents the Heating Pads as providing "soothing therapy for pain relief" and "soothing heat therapy" on the packaging material at the time of purchase. This phrase is misleading and deceptive because the Heating Pads do not deliver soothing therapy and are not therapeutic, because instead of providing therapy, they injure their Users and cause them to seek medical treatment for their injuries and cause the Effects.

44. Kaz also misrepresents the uses, benefits, characteristics, and qualities of the Heating Pads through misleading and deceptive images on the SoftHeat Standard model's packaging that is observed by all retail purchasers, prior to the time of purchase.

45. On the front of the packaging is a picture of a woman dressed in sleep attire, lying on her stomach in a sleeping position, the Heating Pad is positioned across her upper back with one side open to the air. [See Ex. 2].

46. Kaz warns, in the warnings located in the Operating Instructions ("Warnings") that are located only within the sealed Heating Pad packaging accessible only after purchase, not to use the Heating Pad while sleeping, and to check skin under the Heating Pad "frequently."

47. Thus, according to Kaz's own Operating Instructions and Warnings, the picture on the packaging depicts an improper use of the Heating Pad, since the woman is in a sleeping position, and it is, absent extraordinary effort and rare circumstances, impossible for a customer to check the skin on her back (and under her clothing) when the skin on her back and shoulders is not visible to her.

48. Heating Pads are used to relieve pain and discomfort. Owners often use them in conjunction with using pain relief medications and when they are in compromised physical and mental states that mean they are likely drowsy or may become drowsy or sleep as part of relieving their pain.

49. As a result, it is foreseeable that consumers and purchasers are highly likely to fall asleep while using their Heating Pads.

50. In fact, consumers like Plaintiff are led to believe that they can safely use their Heating Pads while falling asleep as Kaz represents on the Heating Pads' packaging that the Heating Pads will automatically shut-off.

51.     Defendants were obliged to disclose, prior to consumers (like Plaintiff and Class members) concluding their purchases, the omitted Material Facts because: 1) Defendants had exclusive knowledge of the Material Facts, since only Defendants had access to the data from their retailers, their own design, engineering, operation, observation and testing of the Heating Pads, and complaints about burns and melting Heating Pads their customers experienced; and 2) Defendants actively concealed and suppressed the omitted Material Facts from Plaintiff and the Class by not warning, at the time Heating Pads were purchased, of the Defects and the Effects.

52.     The omissions of Material Facts and material misrepresentations constitute unfair, fraudulent, and deceptive business acts and practices.

53.     Plaintiff and Class members relied on Defendants omissions and misrepresentations of Material Facts to their detriment.

54.     As a direct and proximate result of the aforementioned misrepresentations and omissions, Plaintiff and Class members lost money through the diminution in value of their Heating Pads, and by being lured into purchasing the defective Heating Pads, when, had the true facts been disclosed, they would not have purchased the defective Heating Pads.

**Defendants' Knowledge/Reckless Disregard of the Defects and Falsity of Their Representations**

55.     Kaz has constructive and actual knowledge of the Defects and the Effects and the falsity of their representations described above. Kaz has been named a defendant in numerous federal and state personal injury cases arising out of burns alleged to have been caused by the Heating Pads, including, a class action lawsuit against Kaz in federal court on behalf of California consumers that alleged that the Heating Pads were unreasonably dangerous due to their failure to shut off; their failure to rapidly dissipate heat; the confusing packaging that caused consumers to think the pads could be used safely while sleeping; and the concealment of

"material information regarding the safety, use, and operation of the Heating Pads, thereby depriving Plaintiff and the Class of the right and opportunity to make informed decisions about whether to purchase the Heating Pads."[1]

56.     The California court certified the class action, and the parties eventually resolved the case via settlement agreement that sent monetary payments to class members, and injunctive relief in the form of a requirement that Kaz defendants change and update the Warnings on the Heating Pads.[2]

57.     Plaintiff, Jody M. Gould, did not have the benefit of the updated Warnings and packaging instructions when she purchased the Heating Pad in 2012 because the changes were not made until 2013 or later.

58.     Kaz also has had constructive and actual knowledge of the Defects and the Effects, and the falsity of its representations through numerous consumer complaints made directly to Kaz or through communications with the Consumer Product Safety Commission, and Food and Drug Administration.

59.     Despite having repeated notice of the Defects and their Effects and the reasonable expectations of consumers created by Kaz's marketing of the Heating Pads, Kaz has engaged and continues to engage in the following routine and wrongful course of conduct, where it:

a.   Designs, manufactures, markets, advertises, and sells the Heating Pads with Defects that cause the Effects;

b.   Fails to disclose at the time of purchase that the Heating Pads have Defects that cause the Effects;

---

[1] *Beck-Ellman v. Kaz USA, Inc.,* 2013 U.S. Dist. LEXIS 60182 (S.D. Cal. Jan. 7, 2013) (Docket Entry 1, Complaint, Paragraph 7, Oct. 13, 2010).
[2] *Id.* at Docket Entry 86, Settlement Agreement (Jan. 7, 2013).

c.  Continues to label some models as "SoftHeat" and "SmartHeat" and represents all Heating Pads as providing "soothing therapy for pain relief" and "soothing heat therapy;"

d.  Continues to representing on "SoftHeat" model packaging a use of the Heating Pad that is directly contrary to Kaz's own Operating Instructions and Warnings;

e.  Continues to represent expressly or by necessary implication that the Heating Pads are dependable and safe to use for the relief of pain and discomfort when it knows these statements are false;

f.  Continues to manufacture, market, advertise, distribute, and sell the Heating Pads when it knows that the Heating Pads are defective and unsafe;

g.  Fails to disclose the risk that to a substantial certainty the Heating Pad will cause the Effects;

h.  Fails to disclose to consumers the Heating Pad Defects;

i.  Fails to disclose the many complaints Heating Pad Users have made regarding failure of the Heating Pad, the Defects and the Effects; and

j.  Fails to implement a recall or repair program to adequately announce to Plaintiff and Class members the existence of the Defects and Effects, and provide, without charge, a solution to remedy and correct the Defects, or replace the Heating Pads with non-defective heating pads.

60.  As a result of Kaz's unfair, fraudulent, and deceptive conduct, Kaz has caused Plaintiff to suffer injury in fact, including, but not limited to diminution in value of Plaintiff's Heating Pads, and by Plaintiff overpaying for a defective product.

61.     Had Plaintiff known of the Defect in the Heating Pads and the substantial risk of burns resulting from use of the Heating Pads, Plaintiff would not have bought the Heating Pads or would have only purchased them if sold at a lower price than the price she paid.

### V.     CLASS ALLEGATIONS

62.     Plaintiff Jody M. Gould brings this action on behalf of herself and all others similarly situated as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. The potential classes are so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the classes, and the representative parties will fairly and adequately protect the interests of the classes.

63.     The Class which Plaintiff seeks to represent s defined as follows:

> "All persons in the United States who purchased, primarily for personal, family or household purposes, Kaz-manufactured electric heating pads which bear the words "Kaz" and/or "SoftHeat" and/or "SmartHeat" and/or "Dunlap" and/or the number 1-800-477-0457 on the packaging or the heating pads themselves, and who did not purchase their Heating Pad to resell it."

64.     Excluded from the Class are (i) Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, predecessors, successors and assigns; (ii) Governmental entities; (iii) Defendants' employees, officers, directors, agents, and representatives and their family members; (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family and any other judicial officer assigned to this case; (v) all persons or entities that properly execute and timely file a request for exclusion from the Class; and (vi) any attorneys representing the Plaintiff or the Class.

65.     Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal the Class should be expanded or otherwise modified.

66.     This action has been brought and may properly be maintained as a class action, pursuant to the provisions of Rule 23(b)(3) of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

67.     <u>Numerosity.</u> The Heating Pads were sold and distributed by Kaz throughout the United States. Plaintiff is informed and believes that the proposed putative Class is made up of thousands of consumers throughout the United States.

68.     <u>Common Issues Predominate.</u> Common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members of the Class. The Heating Pads are all the same and do not differ in any manner that is relevant to Plaintiff's allegations of Defects, the Effects and other damage and harm caused thereby. Plaintiff alleges herein in greater detail, that the Heating Pads all have the same inherent Defects (and that they were defective when made, when they left Kaz's possession and control, and as they now are being used). There is a well-defined community of interest in the questions of law and fact involved and that affect consumers like Plaintiff and the Class who purchased the Heating Pads, and they all suffer from inherent and common defects. These questions of law and fact predominate over questions that affect only individual class members.

69.     The common questions of law and fact include, without limitation:

a.  Whether the Heating Pads have the Defects;

b.  Whether Kaz knew and/or recklessly disregarded the fact that the Heating Pads were and are defective;

   c.  Whether Kaz concealed and failed to disclose to Plaintiff, Material Facts from its advertising, communications, and/or disclosures to Plaintiff regarding the Defects, which are inherent in the Heating Pads;

   d.  Whether Kaz concealed, and failed to disclose to Plaintiff, Material Facts from its advertising, communications, and/or disclosures to Plaintiff regarding the Effects of Defects;

   e.  Whether Kaz has engaged in unfair methods of competition and unfair, fraudulent and deceptive acts or practices in connection with the sale of the Heating Pads;

   f.  Whether Kaz violated the consumer protection statutes of Plaintiff's state of residence;

   g.  Whether Kaz breached express written and/or representative warranties and/or extended warranties;

   h.  Whether Kaz breached its implied warranties;

   i.  Whether Kaz has been unjustly enriched;

   j.  Whether, as a result of Kaz's conduct, Plaintiff has suffered damages; and if so the appropriate amount thereof; and

   k.  Whether, as a result of Defendants' misconduct, Plaintiff is entitled to equitable relief and/or other relief, and if so, the nature of such relief.

70.   These questions of law and fact predominate over questions that affect only individual Class members and there is a well-defined community of interest in the questions of law and fact involved and that affect the Class.

71.   _Typicality._ Plaintiff's claims are typical of the claims of the Class members in that Plaintiff and the Class members have the same Heating Pads, which share the same design, parts,

19

materials, workmanship, were manufactured the same way and have the same warranties and about which Defendants repeatedly made the same uniform representations and omissions. Therefore the claims of Plaintiff are and will be typical of Class members.

72.    The Classes are Ascertainable. Plaintiff has adequately defined the Class, as detailed above, so the Court will be able to use the definitions to determine class membership.

73.    Adequacy. Plaintiff will fairly and adequately represent the interests of all Class members. Plaintiff purchased a Heating Pad and is an adequate representative of the Class as she has no interests that are adverse to the interests of absent Class members. Plaintiff has retained with counsel with substantial experience and success in the prosecution of complex defective product and consumer protection class action litigation.

74.    Superiority. A class action is superior to other available means to achieve a fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The disposition of their claims in this case and as part of a single class action lawsuit, rather than thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds of separate lawsuits. Furthermore, given the extraordinary expenses and burden in conducting the discovery and presentation of evidence about the same inherent defects in the Heating Pads, the burden of individual litigation would make it extremely difficult, if not impossible for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. The Heating Pads are modestly priced products. It would not make sense for a Class member to sue for only

their individual claims arising from Defendants' defective Heating Pads; the attorney fees would be too great for any one Class member to pursue the claims asserted herein. Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendants and result in the impairment of and potential harm to, Class members' rights and the disposition of their interests through actions to which they were not parties. Plaintiff is informed and believes that a great amount of time and expense will be saved by conducting the discovery and presentation of evidence about the inherent Defects in the Heating Pads in a single class action lawsuit, in contrast to repeatedly conduct the same discovery and presenting the same evidence in hundreds or thousands of separate lawsuits brought on the common questions presented by the allegations of this complaint. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION –
### VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES

75.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

76.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices, in violation of the state consumer protection statutes listed below. The direct and proximate result of Defendants' misrepresentations, and unlawful course of conduct was the inducement of Plaintiff and members of the Class to purchase the Heating Pads.

77.    The actions and failures to act of Defendants (including the false and misleading representations and omissions of material facts, and the above described course of fraudulent conduct and fraudulent concealment) constitute acts, uses, or employment by Defendants of unconscionable commercial practices, deception, fraud, misrepresentations and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission of material facts in connection with the sale of Heating Pads of Defendants, all in violation of the consumer protection statutes.

78.    Defendants unfairly, unconscionably, and deceptively advertised, labeled, marketed, represented and sold Heating Pads to Plaintiff and members of the Class without disclosing the Material Facts, Defects and Effects.

79.    Defendants' misrepresentations and omissions induced Plaintiff and members of the Class to purchase the Heating Pads.

80.    Defendants intended that Plaintiff would rely on their materially deceptive practices; and that Plaintiff and members of the Class would purchase the Heating Pads as a

consequence of the deceptive practices, including Defendants' misrepresentations and omissions of Material Facts. Defendants' deceptive representations and material omissions to Plaintiff and members of the Class were and are unfair and deceptive acts and practices. Plaintiff and members of the Class were deceived by Defendants' misrepresentations.

81.   Defendants' actions, as complained of herein, constitute unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state consumer protection statutes.

82.   As a proximate result of Defendants' misrepresentations, Plaintiff and members of the Class have suffered an ascertainable loss, in an amount to be determined at trial, in that they paid for Heating Pads that they would not have purchased had Defendants not engaged in unfair and deceptive conduct. This injury is of the type the state consumer protection statutes were designed to prevent and directly results from Defendants' unlawful conduct.

83.   Under the statutes listed herein to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices, Defendants are the suppliers, manufacturers, advertisers and sellers that are subject to liability for unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

84.   By engaging in the foregoing conduct, Defendants have violated the following State's Unfair and Deceptive Trade Practices and Consumer Fraud Laws:

a.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq.;

b.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, et seq.;

c.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-101, et seq.;

d.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.;

e.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-105, et seq.;

f.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, et seq.;

g.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, et seq.;

h.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 283901, et seq.;

i.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.;

j.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, et seq.;

k.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, et seq.;

l.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, et seq.;

m.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, et seq.;

n.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, et seq.;

o.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, et seq.;

p.  Defendants have engaged in unfair competition or unfair deceptive acts or practices in violation of LSA-R.S. 51:1401, et. seq.

q.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, et seq.;

r.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. COM. LAW CODE § 13-101, et seq.;

s.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, et seq.;

t.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, et seq.;

u.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8.31, et seq.;

v.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, et seq.;

w.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, et seq.;

x.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, et seq.;

y.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq.;

z.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A: 1, et seq.;

aa. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M Stat.§ 57-12-1, et seq.;

bb. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y . Gen. Bus. Law § 349, et seq.;

cc. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.;

dd. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, et seq.;

ee. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, et seq.;

ff.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. 15 § 751, et seq.;

gg. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, et seq.;

hh. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of PA. CONS. STAT. § 201-1, et seq.;

ii. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN LAWS § 6-13.1-1, et seq.;

jj. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, et seq.;

kk. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, et seq.;

ll. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, et seq.;

mm.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

nn. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code § 13-11-1, et seq.;

oo. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451 et seq.;

pp. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq.;

qq. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, et seq.;

rr. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, et seq.;

ss. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT § 100.18, et seq.; and

tt. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN § 40-12-101, et seq.

85.    As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiff and members of the Class are entitled to compensatory damages, treble damages, attorneys' and costs of this suit.

## SECOND CAUSE OF ACTION –
## VIOLATIONS OF UNIFORM DECEPTIVE
## TRADE PRACTICES ACTS

86.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

87.    Plaintiff asserts this claim for violations of the Uniform Deceptive Trade Practices Act ("UDTPA"), which prohibits "[r]epresenting that goods … have sponsorship, approval, characteristics, … uses, [or] benefits … that they do not have," on behalf of a subclass composed of all Class members who reside in the twenty-three states who have enacted these provisions of the UDTPA.

88.    Defendants engaged in deceptive trade practices in violation of the twenty-three state consumer protection statutes that incorporate the provisions of the UDTPA quoted above by, inter alia, (a) failing to timely alert the public regarding known Defects with their Heating Pads; and (b) deliberately omitting Material Facts regarding their Heating Pads; and (c) actively concealing and suppressing the omitted Material Facts from Plaintiff and the Class by not warning at the time the Heating Pads were purchased of Defects and the Effects.

89.    Defendants have violated the deceptive trade practices statutes of the following states that incorporate the provisions of the UDTPA quoted above, as follows:

a.   Defendants have engaged in deceptive trade practices in violation of Ala. Code § 8-19-5, et seq.;

b.   Defendants have engaged in deceptive trade practices in violation of Alaska Stat. § 45.50.471, et seq.;

c.   Defendants have engaged in deceptive trade practices in violation of Cal. Civ. Code § 1770 et seq.;

d.   Defendants have engaged in deceptive trade practices in violation of 6 Del. C. § 2532, et seq.;

e.   Defendants have engaged in deceptive trade practices in violation of Ga. Code Ann. §§ 10-1-372, et seq. 10-1-393, and 26-2-29 et seq.;

f.   Defendants have engaged in deceptive trade practices in violation of Haw. Rev. Stat. § 481A-3, et seq.;

g.   Defendants have engaged in deceptive trade practices in violation of Idaho Code § 48-603 et seq.;

h.   Defendants have engaged in deceptive trade practices in violation of 815 Ill. L.C.S. § 510/2 et seq.;

i.   Defendants have engaged in deceptive trade practices in violation of 10 Me. Rev. Stat. Ann. § 1212, et seq.;

j.   Defendants have engaged in deceptive trade practices in violation of Mich. Comp. L. Ann. § 445.903 et seq.;

k.   Defendants have engaged in deceptive trade practices in violation of Minn. Stat. Ann. § 325D.44 et seq.;

l.   Defendants have engaged in deceptive trade practices in violation of Miss. Code Ann. § 75-24-5 et seq.;

m.   Defendants have engaged in deceptive trade practices in violation of Neb. Rev. Stat. §§ 81-2,285 et seq. and 87-302 et seq.;

n.   Defendants have engaged in deceptive trade practices in violation of N.H. Rev. Stat. § 358-A:2 et seq.;

o.   Defendants have engaged in deceptive trade practices in violation of N.M. Stat. Ann. § 57-12-2 et seq.;

p.   Defendants have engaged in deceptive trade practices in violation of Ohio Rev. Code § 4165.02 et seq.;

q.   Defendants have engaged in deceptive trade practices in violation of Or. Rev. Stat. § 646.608 et seq.;

r.   Defendants have engaged in deceptive trade practices in violation of 10 Penn. Stat. § 162.15 et seq. and 73 Penn. Stat. § 201-2 et seq.;

s.   Defendants have engaged in deceptive trade practices in violation of R.I. Gen. Laws § 6-13-1.1 et seq.;

t.   Defendants have engaged in deceptive trade practices in violation of Tenn. Code Ann. § 47-18-104 et seq.;

u.   Defendants have engaged in deceptive trade practices in violation of Tex. Bus. & Comm. Code § 17.46, et seq.;

v.   Defendants have engaged in deceptive trades practices in violation of Utah Code § 13-11a-3 et seq.;

w.   Defendants have engaged in deceptive trade practices in violation of W.Va. Code § 46A-6-102 et seq.;

90.    To date, Defendants continue to engage in the foregoing unlawful practices in violation of the UDTPA and the deceptive trade practices statutes of the above-referenced states that incorporate the UDTPA.

91.    As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiff and members of the Class are entitled to compensatory damages, treble damages, attorneys' fees and costs of this suit.

### THIRD CAUSE OF ACTION –
### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. §§ 2301 et seq.) – Breach of Written Warranty

92.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

93.    The Heating Pads are "consumer products" as that term is defined under 15 U.S.C. § 2301(1).

94.    Plaintiff are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Heating Pads for personal and household use and not for resale or commercial purposes.

95.    Kaz is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

96.     Kaz provided Plaintiff and the Class with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

97.     In its capacity as a warrantor, and by the conduct described herein, any attempt by Kaz to limit the express warranties in a manner that would exclude coverage for the Defects in the Heating Pads is unconscionable and any such effort to disclaim, or otherwise limit, liability for its defective Heating Pads is null and void as alleged above.

98.     This Court has jurisdiction over this cause of action under 28 U.S.C. § 1332.

99.     By Kaz's conduct as described herein, including Kaz's knowledge of the Defects in the Heating Pads and its action, and inaction, in the face of that knowledge, Kaz has failed to comply with its obligations under its written and implied promises, Warranties, and representations.

100.    Plaintiff and the Class fulfilled their obligations under the Warranties.

101.    As a result of Defendants' breach of express Warranties, Plaintiff and the Class are entitled to revoke their acceptance of the Heating Pads, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## FOURTH CAUSE OF ACTION –
## UNJUST ENRICHMENT

102.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

103.    At all times relevant hereto, Defendants manufactured and sold Heating Pads with the Defects as alleged herein.

104.    Defendants have been unjustly enriched by Plaintiff's and the Class' purchases of Heating Pads.

105.    Plaintiff and the Class unknowingly conferred a benefit, directly and indirectly, on Defendants to their detriment through the purchase of the Heating Pads of which Defendants had knowledge, since Defendants were aware of the presence of the Defect in the Heating Pads and that the Heating Pad Defects would cause the Effects, but Defendants failed to disclose the Material Facts and misled and deceived Plaintiff and the Class regarding the nature, benefits characteristics and quality of the Heating Pads while profiting from this deception.

106.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Defendants to retain the benefit of the funds they have unfairly obtained from Plaintiff and the Class.

107.    Defendants would be unjustly enriched if they were allowed to retain such funds, and therefore, a constructive trust should be imposed on all monies wrongfully obtained by Defendants from the sale of the Heating Pads and the monies held in trust should be ordered returned to Plaintiff and the Class.

### FIFTH CAUSE OF ACTION –
### VIOLATION OF THE NEW YORK DECEPTIVE ACTS AND PRACTICES LAW
### (N.Y. Gen. Bus. 349 et seq.)

108.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

109.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices in the state of New York by making the misrepresentations described above.

110.    The foregoing acts and practices were directed at consumers.

111.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the Material Facts.

112.    Plaintiff and members of the proposed Class were injured as a direct and proximate result of Defendants' violation of the NYDAPL G.B.L. 349 because they purchased Heating Pads, which they would not have done had they known the true facts.

113.    Plaintiff and the proposed Class seek to enjoin the unlawful acts and practices described herein, to recover actual damages, and reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION –**
**VIOLATION OF THE NEW YORK FALSE ADVERTISING LAW**
**(N.Y. Gen. Bus. 350, et seq.)**

114.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

115.    By the acts and conduct alleged herein, Defendants committed false advertising in the conduct of business, trade or commerce in the state of New York contrary to the NYFAL, G.B.L. 350, *et seq*.

116.    NYFAL defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." The foregoing acts and practices were direct at consumers. G.B.L. 350-a.

117.    The foregoing false advertisements are misleading in a material way because they fundamentally misrepresent the proper use and safety of the Heating Pads.

118.    Plaintiff and members of the Class were injured as a direct and proximate result of Defendants' violation of NYFAL because they purchased Heating Pads, which they would not have done if they had known the true facts.

119.    Plaintiff and the Class seek to enjoin the unlawful acts and practices described herein, to recover actual damages, and reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION –
## BREACH OF EXPRESS WARRANTY

120.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

121.    Defendants were and are at all relevant times "merchants" within the meaning of the Uniform Commercial Code ("UCC").

122.    Defendants manufactured, distributed, and marketed the Heating Pads, which are "goods" within the meaning of the UCC and other applicable commercial codes.

123.    Defendants warranted all of the Heating Pads against defects in materials, parts and workmanship at a time when they knew that these Heating Pads suffered from the Defects causing the Effects, yet continued to market and sell the Heating Pads with the express Warranties referenced above. Defendants also warranted that the Heating Pads were safe and dependable and conformed to their intended purposes and Defendants' affirmations of fact. For example, Kaz warranted that the Heating Pads would deliver "soothing therapy for pain relief" and "soothing heat therapy" as more fully described above. These affirmations and promises created express Warranties that the Heating Pads would operate properly and without defects and would conform to Kaz's affirmations and promises. Defendants' affirmations and promises became part of the bases of the bargains between Plaintiff and the Class and Kaz.

124.    Defendants are obligated under the terms of their express Warranties to repair and/or replace the parts or materials that are the Defects in the Heating Pads sold to Plaintiff, and/or to make the Heating Pads conform to the Warranties.

125.    Defendants failed to make the Heating Pads conform to the express warranties they made and have breached their express Warranties by selling and supplying the Heating Pads in a condition which does not meet the warranty obligations undertaken by Defendants and by

failing to repair or replace the Defects, which are inherent in the Heating Pads and that are substantially certain to burn Users' skin.

126. Defendants have received sufficient and timely notice of the breaches of Warranties alleged herein. In addition, Defendants have received thousands of complaints and other notices about the Defects, the Effects and the omitted Material Facts from their customers nationwide. Despite receiving notice, and Defendants' knowledge, Defendants refuse to honor their Warranties.

127. Defendants knew of their obligations under the Warranties to replace defective Heating Pads with non-defective Heating Pads. However, Defendants have willfully refused to replace the Heating Pads. Therefore, Defendants are liable for damages, as well as civil penalties.

128. Kaz's time limits on its express Warranties are unconscionable, since it knowingly and/or recklessly sold a defective product that was defective at the time of sale, without conspicuously informing consumers about the Defects, Effects and the resulting substantial certainty of failure and burns. The time limits on all but the lifetime express Warranties are grossly inadequate to protect Plaintiff and members of the proposed Class. Plaintiff had no meaningful choice in determining those time limitations; the Warranties were written by Defendant, without input of Plaintiff; the terms of the express Warranties overwhelmingly favor Defendants by unreasonably limiting the Warranty on some models 3-5 years on a product that could reasonably be expected to last up to 20 or more years; a gross disparity in bargaining power existed as between Defendants and Plaintiff; and Defendants knew or should have known that the Heating Pads were defective at the time of sale, thereby rendering the time limitations in Defendants' express warranties insufficient, inadequate and unconscionable.

129.     The practices of the Defendants in manufacturing and selling defective Heating Pads also constitutes a breach of express warranty under the various state statutes where members of the proposed Class reside, and where Defendants resident, and do business throughout the United States.

130.     As a direct and proximate result of Defendants' breach of express Warranty, Plaintiff has sustained damages and other losses in an amount to be determined at trial. Plaintiff and members of the proposed Class are entitled to recover damages and penalties as provided by statute, as well as costs, attorneys' fees, rescission, and other relief as is deemed appropriate.

**EIGHTH CAUSE OF ACTION –**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

131.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

132.     Defendants as the designer, manufacturer, marketer, distributor, and/or seller of Heating Pads, impliedly warranted that the Heating Pads were of merchantable quality and, among other warranties, that the Heating Pads would pass without objection in the trade or industry, and were fit for the ordinary purpose for which Heating Pads are used.

133.     Defendants knowingly and/or recklessly sold a defective product without conspicuously informing consumers the Defects were present in the Heating Pads. Defendants possessed actual superior knowledge about the Defects, that the Heating Pads were substantially certain to fail, and that using the Heating Pads exposed Users to the substantial risk that they would be burned.

134.     Plaintiff Jody M. Gould's Heating Pad became unfit for its ordinary purpose within the implied warranty period.

135.     Defendants' Heating Pads are not adequately contained, packaged, and/or labeled.

136.    Plaintiff and the Class were the intended third-party beneficiaries of the implied warranty made by Defendants. Defendants, who are the manufacturers of the Heating Pads knew that the retailers to whom they sold the Heating Pads were not going to own the Heating Pads any longer than it took to sell them to Plaintiff and members of the proposed Class. Further, Defendants intended that any Warranties, whether express or implied, that applied to the Heating Pads were for the benefit of the Plaintiff and members of the proposed Class, those who would own and use the Heating Pads.

137.    Defendants knew and intended that Plaintiff and members of the proposed Class were the ultimate beneficiaries of Defendants' implied warranties as they are the owners of the Heating Pads.

138.    Defendants, who manufacture and market the Heating Pads, and/or sell the Heating Pads, knew that Plaintiff and the Class were the end Users of the Heating Pads when Defendants entered into any and all sales contracts and subcontracts for the Heating Pads and Defendants' intent to benefit Plaintiff and members of the proposed Class arises by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the Heating Pads entered into by Defendants.

139.    Any language used by Defendants to attempt to exclude or limit the availability of implied warranties, remedies, or the period within which to bring claims, is barred by their direct misrepresentations to consumers, regarding the existence and nature of the defect. In addition, and in the alternative, any such limitation is unconscionable and void because of Defendants' knowledge of the defect at the time of sale, it fails to conform to the requirements limiting implied warranties under the applicable laws of New York, and because any such limitation creates a warranty that fails of its essential purpose. By the virtue of the defective design or

manufacture, Defendants knew or should have known that the Heating Pads were at all times defective, including at the time Plaintiff and members of the proposed Class purchased the Heating Pads.

140.   The practices of Defendants in manufacturing and selling defective Heating Pads also constitutes a breach of implied warranty of merchantability under the various state statutes where Plaintiff and members of the proposed Class reside, and where Defendants resident and do business throughout the United States.

141.   As a proximate result of Defendants' breach of implied warranty, Plaintiff and members of the proposed Class have sustained damages and other losses in an amount to be determined at trial. Plaintiff and members of the proposed Class are entitled to recover damages and attorneys' fees as provided by statute, as well as costs, rescission, and other relief as is deemed appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants for the following:

a.   For an order certifying the Class, appointing Plaintiff and his counsel to represent the Class and notice to the Class to be paid by Defendant;

b.   For damages suffered by Plaintiff and the proposed Class;

c.   For restitution to Plaintiff and the proposed Class of all monies wrongfully obtained by Defendants;

d.   For injunctive relief requiring Defendants to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

e.  An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendants' past conduct;

f.  For Plaintiff's reasonable attorneys' fees, as permitted by law;

g.  For Plaintiff's costs incurred;

h.  For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i.  For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

A.  For an Order certifying this action as a class action and appointing Plaintiff and her Counsel to represent the Class;

B.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendants' wrongful conduct;

C.  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

D.      For an award of costs of suit and attorneys' fees, as allowable by law; and

E.      Such other and further relief as this court may deem just and proper.


Dated: March 18, 2016


x_____

**Law Office of Paul C. Whalen, P.C.**
Paul C. Whalen (PW1300)
768 Plandome Road
Manhasset, NY 11030
T: (516) 426-6870
F: (212) 658-9685
Email: pcwhalen@gmail.com

**JONES WARD PLC**
Jasper D. Ward IV
Alex C. Davis
Marion E. Taylor Building
312 S. Fourth Street, Sixth Floor
Louisville, Kentucky 40202
T: (502) 882-6000
F: (502) 587-2007
Email: jasper@jonesward.com
Email: alex@jonesward.com

Attorneys for Plaintiff and the Proposed Class